IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK VORIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 6840 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CREDITORS ALLIANCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Mark Voris ("Voris"), brings suit against Defendant, Creditors Alliance, Inc. ("CAI") under 15 U.S.C. § 1692c(a)(1), the Fair Debt Collections Practice Act ("FDCPA" or "the Act"), seeking actual and statutory damages arising from phone calls made to Voris before 8:00 a.m. to collect a debt. CAI moves for summary judgment. For the reasons stated herein, CAI's Motion for Summary Judgment is granted and Voris's case is dismissed with prejudice.

**STATEMENTS OF FACT**

Voris resides at 116 S. Clifton in Park Ridge, Illinois ("the Clifton address") and is a twenty-two year veteran of the information technology sector. Pl. Resp. 56.1 ¶¶ 1, 4.[1] On February 13, 2000, Voris formed a single member limited liability company called Intelimind LLC ("Intelimind"). *Id.* Intelimind is an information technology company. *Id.* In 2000 and 2001, Voris ran Intelimind from his home and took a 25% deduction on his taxes for using his home as his business office. *Id.*

In May 2000, Voris engaged The Hechtman Group ("THG"), to perform accounting services

---

[1] Citations to Plaintiff's Responses to Defendant's 56.1 Statement of Facts are abbreviated to "Pl. Resp. 56.1" and Defendant's Responses to Plaintiff's Statement of Additional Facts are abbreviated as "Def. Resp. 56.1."

1

and met with James Hechtman ("Hechtman"), a CPA and principal of THG. Pl. Resp. 56.1 ¶ 6. During their first meeting, Hechtman and Voris discussed forming Intelimind, using Quickbooks for business accounting, employee issues such as hiring and payroll, and taxes for Intelimind and Voris. Def. Resp. 56.1 ¶ 1. THG worked with Voris and Intelimind from May 2000 to October 2002 and THG prepared eight invoices associated with its work. The last invoice was dated October 31, 2002 and states as follows:

> Professional Services Rendered as follows:
>
> | | |
> |---|---|
> | Services rendered regarding preparation of federal and state individual income tax returns for the year ended December 31, 2001. | 1,370.00 |
> | Services rendered regarding income tax and financial planning for the year ended December 31, 2001 and 2002. | 625.00 |
> | Services rendered in client discussions and emails regarding payroll for 2002, writing off old invoices and other quickbooks related questions. | 150.00 |

Pl. Resp. 56.1 ¶ 7; Def. Resp. 56.1 ¶ 8; Ex. I. Hechtman cannot recall the specifics of the $625.00 charge for "income tax" and "financial planning" because the entry on the invoice was too vague. Def. Resp. 56.1 ¶ 7. The charge could have been related to work for Intelimind. *Id.* Regarding the $1,370.00 entry, Hechtman explained that the income tax preparation he performed was for Intelimind and Voris because Intelimind, as a single member limited liability company, is permitted under IRS regulations to file one set of taxes for both the member and the limited liability company. Pl. Resp. 56.1 ¶ 10. Intelimind, as a limited liability company, does not have its own tax liability from the IRS's perspective and essentially, for tax purposes, a single member limited liability company and the actual person are one in the same. *Id.* In other words, when an accountant does the taxes for the person, he is doing the taxes for the LLC. *Id.* Voris filed federal and state tax

returns prepared by THG for the year ended December 31, 2001. Pl. Resp. 56.1 ¶ 9. Intelimind paid the taxes owed under the 2001 Tax Returns with checks drawn on Intelimind's bank account. Pl. Resp. 56.1 ¶ 9.

THG sent all eight invoices to Intelimind's registered business address, the Clifton address.[2] Pl. Resp. 56.1 ¶ 7; Def. Resp. 56.1 ¶ 8. Hechtman knew Voris was running Intelimind out of his home. Pl. Resp. 56.1 ¶ 7. Orla Voris ("Mrs. Voris') gave the invoices THG sent to Intelimind to Voris because those bills were for Intelimind. Pl. Resp. 56.1 ¶ 28. The invoices sought payment for THG's services which included preparing federal and state individual income tax returns, payroll taxes, income taxes, and financial planning. Pl. Resp. 56.1 ¶ 7; Def. Resp. 56.1 ¶ 8. Intelimind paid seven out of eight invoices from THG, but did not pay the October 31, 2002 invoice leaving a balance of $2,145.00 (the "debt"). Pl. Resp. 56.1 ¶ 8. The October 31, 2002 invoice was submitted by THG to Intelimind at the Clifton address which was Intelimind's registered business address. Ex. I. THG included Voris's name on the invoices in addition to Intelimind's because of prior problems associated with mailing items to Intelimind's registered business address. Def. Resp. 56.1 ¶ 6.

When Intelimind failed to pay the debt, THG sent the October 31, 2002 invoice to CAI, an Illinois corporation engaged in the business of collecting third party debts. Pl. Resp. 56.1 ¶¶ 2,8. Prior to commencing collection procedures, the original creditor, in this case THG, must prepare and submit a collection ticket indicating whether the referred debt is commercial or consumer in nature.

---

[2] Voris's home address and Intelimind's business address were one in the same– 116 S. Clifton, Park Ridge, Illinois. *Id.* Intelimind later moved its office out of Voris's home and into various office spaces including 120 W. Madison, Chicago, 32 Main Street, Park Ridge, and 9 South Fairview, Park Ridge, Illinois. Pl. Resp. 56.1 ¶ 5.

Pl. Resp. 56.1 ¶ 11. The original creditor must also provide information necessary to collect the debt such as the consumer or the business's address and contact information. Pl. Resp. 56.1 ¶ 11. CAI uses collection tickets to ensure compliance with the FDCPA. Pl. Resp. 56.1 ¶ 11.

On July 21, 2005, THG prepared and submitted a collection ticket to CAI to initiate collection of the debt. Pl. Resp. 56.1 ¶ 12. THG identified the debtor as Intelimind with an address of 116 S. Clifton, Park Ridge, Illinois, a phone number of (847) 384-1519, Voris's home number, a contact name of Mark Voris, and a debt amount of $2,145.00 for professional services. *Id*. THG marked the "commercial" versus the "consumer" box on the collection ticket indicting that the debt was "commercial" in nature. Def. Resp. 56.1 ¶¶ 4, 9; Ex. K.[3] CAI received the collection ticket on July 26, 2005 and assigned Agnes Hedin ("Hedin") as the debt collector. Pl. Resp. 56.1 ¶ 13. Hedin attempted to collect the debt as a commercial debt by sending collection letters to Intelimind and calling the phone number THG provided for Intelimind on the collection ticket–Voris's home number. Pl. Resp. 56.1 ¶ 11. Unbeknownst to CAI, when Voris filed his 2000 federal and state income taxes, he had a separate office line. Def. Resp. 56.1 ¶¶ 4, 9. Hedin believed that the Debt was a commercial debt and never received any information indicating that it was not a commercial debt. Pl. Resp. 56.1. ¶ 13. At the time CAI called Voris, CAI was not aware whether the person who answered the phone was an officer or employee of Intelimind. Def. Resp. 56.1 ¶ 14.

Voris alleges that he received three phone calls at an inconvenient hour– October 25, 2005 at 7:55 a.m., November 21, 2005 at 7:15 a.m., and November 22, 205 at 7:25 a.m. Pl. Resp. 56.1 ¶ 19. However, at his deposition, Voris could not remember the dates or times CAI called and

---

[3] In Voris's Response to Defendant's Statement of Facts, Voris disputes that the Commercial box was checked and bases that dispute on Hechtman's testimony. Upon review of Hechtman's testimony and Exhibit K (the fax cover sheet), this Court finds that there is no genuine issue of disputed fact that the commercial box was checked. See Hechtman Dep. Tr. pp. 41-42. 63; Ex. K.

believed that his wife spoke with CAI on one occasion. Pl. Resp. 56.1 ¶ 20. Mrs. Voris is not an employee of Intelimind. Def. Resp. 56.1 ¶ 15. Both parties produced phone records for the relevant time period. Voris's phone records show that CAI called Voris on October 25, 2005 at 8:59 a.m. Pl. Resp. 56.1 ¶ 21. Voris's phone records do not show that he received any phone calls from CAI on November 21 and 22, 2005 before the hour of 8:00 a.m. Pl. Resp. 56.1 ¶ 22. Voris claims that his phone bills reflect call times on Eastern Standard time, but Voris does not know where the phone bills originated or where the phone company was located and the records do not reflect the relevant time zone. Def. Resp. 56.1 ¶ 10.

CAI's phone records show a call on October 25, 2005 at 8:59 a.m. and CAI's phone records were recorded in Central Standard Time. Def. Resp. 56.1 ¶ 10. However, CAI does not dispute that it called Voris's home prior to 8:00 a.m. on more than one occasion. Def. Resp. 56.1 ¶ 12. CAI's collector's notes reflect that it called Voris on November 21, 2005 at 7:16 a.m. and on November 22, 2005 at 7:24 a.m. without leaving messages Def. Resp. 56.1 ¶ 24. Pl. Resp. 56.1 ¶ 22. Additionally, CAI's collector's notes indicate that CAI telephoned Voris on November 8, 2005. During that call, a woman answered the phone and "was dealing with kids and hung up." Def. Resp. 56.1 ¶ 18. On November 16, 2005, CAI called THG to obtain Voris's cell phone number. Def. Resp. 56.1 ¶¶ 20-21. On the same day, CAI called Voris's cellular and business numbers. Def. Resp. 56.1 ¶ 19. CAI called Voris at home on November 17, 2005 and his business line on November 18, 2005. Def. Resp. 56.1 ¶¶ 22-23.

CAI continued calling and sending letters to Intelimind until November 28, 2005 at which time CAI sent the debt to an attorney for further collection. Pl. Resp. 56.1 ¶ 15. After Voris filed the instant lawsuit, Intelimind agreed to pay $1,500 to settle the debt with two checks for $750.00

5

each drawn from Intelimind's account. Pl. Resp. 56.1 ¶ 17. Voris testified that he borrowed money from Intelimind through a deduction in equity to pay bills to THG but produced no documentation supportive of the deduction or actual repayment to Intelimind. Pl. Resp. 56.1 ¶ 17; Def. Resp. 56.1 ¶ 11.

When CAI called Voris's home, his wife was nearly nine months pregnant. Pl. Resp. 56.1 ¶ 23. Voris alleges that he was damaged at the time of the calls or immediately thereafter but Voris was unable to testify to any personal humiliation, embarrassment, mental anguish, or emotional distress other than receiving three phone calls before 8:00 a.m. *Id*. Mrs. Voris believes that the phone calls irritated her husband because they woke her, but otherwise, she could not say how Voris was damaged. Pl. Resp. 56.1 ¶ 26. Mrs. Voris is not seeking damages in this lawsuit.

Although Voris alleges that CAI's calls came at 7:55 a.m., 7:15 a.m., and 7:25 a.m., during the time CAI phoned Voris's home, Mrs. Voris worked Mondays, Wednesdays, and Fridays as a physical therapist and left the house by 6:30 a.m. to go to work. Pl. Resp. 56.1 ¶ 25. Mrs. Voris recalled answering only one phone call from CAI, and she did not tell the caller that CAI was calling a home phone number or that CAI should not call that number. Pl. Resp. 56.1 ¶ 27. Voris did not tell CAI to call him at his office instead of his home number and did not receive calls from CAI on his office phone. Pl. Resp. 56.1 ¶ 14.

CAI's Training manual states as follows:

"Retail claims are for an individual or the individuals's family receiving services from doctors, attorneys, dentists, or accountants."

"Commercial claims have a different origin and purchase. The corporation, partnership, or sole ownership operation (the one who purchased) buy with the intention of reselling the item(s) and making a profit. The purchaser buys, from other companies, materials or services or from companies that furnish service to other companies. The debt is not assumed to satisfy an individual or the individual's

6

family, but it does for business."

Def. Resp. 56.1 ¶¶ 25.   The CAI manual provides an example of a "retail claim" as follows:

"Tim Smith uses the services of W. Johnson, accountant, for his personal tax records and to prepare his annual tax return. If Mr. Smith doesn't pay for the services he received, and this claim goes to collections, this claim would be retail. It satisfies the needs of the individual." "However, if Tim Smith, as President of ABC Construction, hires W. Johnson, the accountant, to handle the accounting and auditing work for Smith's business and does not pay for the services, it is a commercial claim."

Def. Resp. 56.1 ¶ 27.

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion

7

of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

**DISCUSSION**

I.   CAI was not governed by the FDCPA because the debt was commercial

The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices. *Heintz v. Jenkins*, 541 U.S. 291, 293 (1995). The Act regulates the debt collection tactics employed against personal borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods. *See* S. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). The Act says, for example, that a "debt collector" may not use violence, obscenity, or repeated annoying phone calls and imposes civil liability to those who violate the Act's provisions. *Heintz*, 541 U.S. at 293; *citing* 15 U.S.C. § 1692d; § 1692k. The Act's definition of the term "debt collector" includes a person "who regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another." 15 U.S.C. § 1692a(6). It limits "debt" to consumer debt. *Id.* A consumer debt is defined as a debt "arising out of . . . transaction[s]" that "are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Under the Act, a debt collector may not communicate with a consumer in connection with the collection of any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. 15 U.S.C. § 1692c(a)(1). In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

8

*Id.*

Voris's accountant, Hechtman, was the original creditor who passed on the debt collection services to CAI, a debt collector. Voris maintains that the debt arose out of a transaction that was primarily for personal or family purposes, namely, income tax preparation, and thus, was governed by the FDCPA. CAI maintains that it was not governed by the FDCPA because the debt arose out of a transaction primarily for commercial purposes, namely, for Voris's limited liability company, Intelimind. The FDCPA is designed to protect consumer debtors and not commercial debtors. *Torres v. American Tel. & Tel. Co.*, 1989 U.S. Dist. LEXIS 454, *2 (N.D. Ill. 1989). Thus, whether the Act applied to CAI depends upon whether the original creditor's services were rendered primarily for Voris as a "natural person" or for Intelimind, Voris's limited liability company. *See* 15 U.S.C. § 1692a(3) (The term "consumer" means any natural person obligated or allegedly obligated to pay any debt). CAI does not dispute that it called Voris's home number on more than one occasion prior to 8:00 a.m., however, if the debt was commercial in nature, the Act does not apply and CAI's phone calls made before 8:00 a.m. to Voris's home will not result in civil liability under the Act.

This Court finds that the FDCPA was not designed to protect Voris and did not apply to CAI when it contacted Voris to collect the debt. The original creditor, Hechtman, is more likely to know whether Voris's debt was personal or commercial at its incipience than either the creditor or the debt collector. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000). THG identified the debtor as Intelimind and checked the "commercial" box indicating to CAI that the debt was commercial in nature. With respect to the invoice at issue, THG included Voris's name on the invoices in addition to Intelimind's because of mailing problems to

9

Intelimind's registered business address, which was also Voris's home address. Moreover, Intelimind, not Voris, paid all of Hechtman's prior invoices. Mrs. Voris gave the invoices THG sent to Intelimind to Voris because those bills were for Intelimind. Although Voris claims that Hechtman's preparation of the 2001 tax returns was primarily for him personally, Intelimind, not Voris, paid the taxes owed after the returns were filed with checks drawn on Intelimind's bank account. Intelimind, not Voris, agreed to pay $1,500 to settle the debt with two checks for $750.00 each drawn from Intelimind's account.

At best, Voris introduced evidence that some of Hechtman's work concerned Mr. and Mrs. Voris's personal income tax preparation. Hechtman testified that Intelimind didn't have its own tax liability from the IRS's perspective and that essentially, for tax purposes, a single member LLC and the actual person are one in the same. Hechtman explained that when an accountant does the taxes for the person, he is doing the taxes for the LLC. Even if Hechtman's work was a mixed bag of personal and commercial accounting, the statute requires that the debt was incurred "primarily" for personal or family purposes and Voris falls far short of proffering sufficient evidence that the THG debt was primarily for Voris as an individual and not for his business.

Based upon the evidence, this Court concludes that the evidence supports CAI's assertion that the debt was incurred by Intelimind and was not primarily for personal or household purposes. The Act was not intended to apply to businessmen, such as Voris, who incurred debts while running a business; *See Torres*, 1988 U.S. Dist. LEXIS 12596 at * 5; (debts incurred by plaintiff running a sole proprietorship are not for "personal, family or household purposes) and Voris is not the kind of "unsophisticated" personal borrower that Congress intended to protect. *See* S. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977); *Keele*, 149 F.3d 589 at 594; *McCartney*, 970 F.2d at 47. Accordingly,

Voris failed to proffer evidence such that a reasonable jury could find that the Hechtman debt arose primarily for personal, family, or household purposes. Therefore, CAI's attempts to collect the debt are not subject to the FDCPA because the debt was not an obligation of a consumer and CAI is entitled to summary judgment.

II.   CAI is entitled to a bona fide error defense

Even if this Court were to assume that CAI's attempts to collect the debt were subject to the FDCPA, CAI is entitled to a bona fide error defense. CAI may not be held liable in any action brought under the Act if CAI shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c). To qualify for the bona fide error defense, CAI must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error (here, assuming that the debt was commercial in nature); and (3) it must show that it maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 537 (7th Cir. 2005); *citing Jenkins*, 124 F.3d at 834. The Court will consider each element in turn.

First, Voris proffered no evidence that CAI intentionally violated the FDCPA. Second, CAI's assumed error was bona fide. That is, if made, it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake. *Kort*, 394 F.3d at 537; citing Black's Law Dictionary 168 (7th ed. 1999) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere; genuine"); *see also Edwards v. McCormick*, 136 F. Supp. 2d 795, 801 (S.D. Ohio 2001). If CAI did in fact erroneously assume that the debt was commercial in nature, it did so because the original

11

creditor, THG, identified the debtor as Intelimind and checked the "commercial" box indicating to CAI that the debt was commercial in nature. Moreover, CAI's collection ticket, prepared by THG, identified the debtor as Intelimind with an address of 116 S. Clifton, Park Ridge, Illinois, a phone number of (847) 384-1519, a contact name of Mark Voris, a debt amount of $2,145.00 for professional services. Intelimind's registered business address is Voris's home address. Hedin attempted to collect the Debt as a commercial debt by sending collection letters to Intelimind and calling the phone number THG provided for Intelimind. Neither Voris nor Mrs. Voris told CAI to call Voris at his office instead of his home number. CAI believed that the debt was a commercial debt and never received any information indicating that it was not a commercial debt.[4] Accordingly, DCS has satisfied § 1692k(c)'s second element.

Third, CAI maintained procedures reasonably adapted to avoid an error such as mistaking a consumer debt for a commercial one. CAI required creditors to classify whether debts received for collection were consumer or commercial in nature prior to commencing collection. Additionally, the CAI collection ticket provides other information such as the name of the business and registered business address. CAI also trained its employees using detailed training manuals with examples of commercial versus consumer debts. For example, the CAI manual provides an example of a "retail claim" as follows:

---

[4] Voris makes much of a fax cover sheet sent from Dan Kohlenberg of CAI to its attorneys after litigation ensued. Despite Voris's contentions, this Court finds that Kohlenberg's comments to his attorneys considered on their face are proof of nothing. Kohlenberg, long after CAI attempted to collect the debt, stated to his attorneys that "A copy of the invoice is attached you will see that some individual work was done." Ex. D. First, Mr. Kohlenberg's comments were made long after CAI attempted to collect the debt, and thus, are not representative of CAI's knowledge at the time Anne Hedin called Voris. Second, Kohlenberg went on to comment that THG's work was done for an LLC and that the form used to turn in the account for collection was in the name of a business. More important, even if "some individual work was done" the statute requires that the work was *primarily* personal in nature.

"Tim Smith uses the services of W. Johnson, accountant, for his personal tax records and to prepare his annual tax return. If Mr. Smith doesn't pay for the services he received, and this claim goes to collections, this claim would be retail. It satisfies the needs of the individual." "However, if Tim Smith, as President of ABC Construction, hires W. Johnson, the accountant, to handle the accounting and auditing work for Smith's business and does not pay for the services, it is a commercial claim."

This Court finds that CAI's collection tickets and training manuals are reasonable procedures designed to ensure compliance with the Act. Section 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more . . ., § 1692k(c) only requires collectors to adopt reasonable procedures."). Therefore, CAI has satisfied § 1692k(c)'s third element.

Accordingly, even if the Act applied to CAI's collection methods, CAI is entitled to a bona fide error defense and summary judgment should be granted.

III.     Conclusion and Order

For the foregoing reasons, Creditors Alliance, Inc.'s Motion for Summary Judgment is granted and Mark Voris's case is dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: November 28, 2007